IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JAMES E. HURD,                          )
                                        )
      Petitioner,                   )
                                        )
v.                                      )          Case No. 1:15-cv-01130-STA-egb
                                        )
SHAWN PHILLIPS,                         )
                                        )
      Respondent.                   )

---

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

In May 2015, Petitioner, James E. Hurd, a Tennessee state prisoner, filed a *pro se* habeas

corpus petition under 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) For the reasons that follow,

the Petition is **DENIED**.

## BACKGROUND

### 1. State Proceedings

The following background summary is drawn from the state court record, (ECF No. 16),

the decision in Hurd's direct appeal, *State v. Hurd*, No. W2011-01232-CCA-R3-CD, 2012 WL

12931991, at *1 (Tenn. Crim. App. June 28, 2012), and the decision in his appeal from denial of

post-conviction relief, *Hurd v. State*, No. W2014-00137-CCA-R3-PC, 2014 WL 6482820, at *1

(Tenn. Crim. App. Nov. 18, 2014).

In November 2010, the Madison County, Tennessee, grand jury returned an indictment charging Petitioner with two counts of sexual battery. (ECF No. 16-1 at 6-8.) At his jury trial, his daughter testified that in February 2010, near her twelfth birthday, "she went to visit her father . . . at his house." *Hurd*, 2012 WL 12931991 at *1. While her four-year-old brother played in the living room, the victim was called by the defendant into his bedroom and "told . . . to take off her clothes." *Id.* She went into the bathroom in order to avoid complying. "[W]hen she came out of the bathroom, the defendant again told her to take off her clothes; she did not do so." *Id.* At the time, the defendant was on the bed and the victim was near the bed. When he told her again to undress, she did so. "The defendant then told her to lie down on the bed," and he "touched her vagina and breasts," telling her "'Don't let boys touch here.'" *Id.* The victim testified that Petitioner "touched her breasts for three to five minutes," and "looked closely at her vagina and touched her vaginal area for five minutes." *Id.* She further testified that her father "told her that her mother had asked him to 'have a sex talk' with her." *Id.* "The victim told two friends about the incident, but did not tell any adults." *Id.*

Hurd's daughter further testified that, "[o]n a Saturday in April of the same year," she went with the defendant to his automotive painting business, where he told her "to get undressed and lie on the table." *Id.* He proceeded to kiss her on the mouth and touch her breasts, buttocks, and vaginal area for a "'long time.'" *Id.* She testified that, after this incident, she drew a picture in her journal depicting pain and wrote:

> "My problem with my daddy:
>
> He touched me on my breast & on my pr[i]v[a]te area. He tongued-kissed me & grabbed my butt I'm scared the next step is rape, but I'm scared to tell my mom because my dad could go to jail I'm scared this put me in a weird position. To tongue kiss your dad your dad is not supposed to do that I'm scared out of my mind LORD PLEASE HELP ME I NEED YOU I NEED YOU I need your help Lord

*Id.* at *2.

The victim also testified that, on the Monday following the second assault, she told a crisis counselor at school "what the defendant had done, and [the counselor] contacted the authorities." *Id.*

On cross-examination, the victim agreed that "she had been disrespectful to her stepfather and her father had talked with her about being respectful towards her stepfather." *Id.* She testified that after the first assault, she tried to avoid staying at her father's house. She said that "she did not visit the defendant between the first and second assault." *Id.*

The school crisis counselor testified that on Monday, April 26, 2010, a student told her about the assaults. The counselor then interviewed the victim and contacted her mother and the police. *Id.*

An investigator from the Jackson Police Department testified that she took a written statement from Hurd on April 30, 2010, in which he denied assaulting his daughter. He stated that "[o]ver the weekend [he] had a conversation with" his daughter "about anyone touching her" and about her menstrual cycle. *Id.* He further stated that he inquired of her whether anyone had touched her or fondled her, and "asked her to take off her clothing so [he] could" check. *Id.* He explained that he "checked her," but only pointed to her breasts and vagina in order to explain to her that fondling meant touching those areas. He stated that he also told her that "it was wrong for anyone, Mom, Dad, or anyone else to touch her." *Id.* He insisted that he did all of these things because he "was trying to protect and warn [the victim] about people." *Id.* The statement was admitted into evidence.

Pediatrician Lisa Piercey testified that she was the director of the Madison County Child Advocacy Center. She was offered "as an expert in the field of medicine concerning the maltreatment of children." *Id.* She testified that she took the victim's medical history,

emphasizing to her "the importance of providing accurate information." *Id.* Dr. Piercey described what the victim told her about the assaults, "which was essentially the same as [the victim's in-court] testimony with the exception that . . . the victim did not" tell Dr. Piercey "that the defendant touched her breasts." *Id.* The doctor further testified that she examined the victim, but did not find any "physicial evidence [or] evidence that the victim was penetrated." *Id.* She stated "'very rarely, if ever,'" will the crime described by the victim "leave[] any physical evidence." *Id.*

The defense called the victim's mother to the stand. She testified that "she had asked the defendant to speak with the victim about being disrespectful to her stepfather," but that "she had never asked [him] to have a conversation with the victim about the victim being involved with a fifteen-year-old boy." *Id.* at *3. Contradicting the victim's testimony, she testified that "the victim had visited" her father "at least two times" between the assaults. *Id.*

The defendant's wife, Chantelle Hurd, testified that, on February 8, 2010, Petitioner was alone at their house with the victim and the victim's younger brother while she was working. She also "confirmed the victim's testimony that she had not visited the defendant" at their house after February 8, 2010. *Id.*

The defendant testified that, on February 8, 2010, he was alone at his house with his son and daughter. He stated that "the victim's mother had asked him to speak with the victim about two topics: sex and acting disrespectfully to her stepfather." *Id.* He testified that he asked his daughter "if she knew her private parts, if she was involved with any boys, and if anybody had touched her," and that she answered "no." *Id.* He insisted that she did not undress and that he did not touch her.

Hurd further testified that on the date of the alleged second assault, he picked-up the victim in his truck. During the drive to his shop, he asked her "how she felt about 'coming on her cycle,'"

4

because the victim's mother had requested that he do so. *Id.* While at his shop, "he did not touch her at all," but just "'looked [her] over for bruises and scars.'" *Id.* (brackets in original). He further testified that his daughter "visited him during the time she said she was making excuses to stay away." *Id.*

On cross-examination, Petitioner admitted that "he had the victim remove her clothes" while at his shop "so that he could 'check her.'" *Id.* "He testified that he was looking for scars and bruises on her breasts and vaginal area because when he had asked her in the car if anyone had touched her, she paused before saying 'no,' and then did not respond when asked if she were sure." *Id.* He stated that he had decided to check her at his place of business because it was "located close to the hospital where the victim's mother worked, and they could have gone there if he had found something." *Id.*

The State recalled the victim's mother in rebuttal. She testified that she did not ask the defendant to speak with the victim about sex or her menstrual cycle. *Id.* at *4.

The jury found Hurd guilty of two counts of aggravated sexual battery, and the court sentenced him to a concurrent sentence of twelve years. (ECF No. 16-1 at 94.) Petitioner took an unsuccessful direct appeal to the TCCA challenging the sufficiency of the evidence. *Hurd*, 2012 WL 12931991, at *5. The Tennessee Supreme Court denied permission to appeal. (ECF No. 16-11.)

Petitioner subsequently filed a state *pro se* post-conviction petition, (ECF No. 16-12 at 6-35), which was amended by appointed counsel, (*id.* at 57). The post-conviction trial court held an evidentiary hearing, (ECF No. 16-13), and denied relief, (ECF No. 16-12 at 70-71). The TCCA affirmed. *Hurd*, 2014 WL 6482820, at *8.

## 2. Federal Habeas Petition

On May 22, 2015, Hurd filed his federal habeas Petition, which presents the following claims:

**Claim 1:** The evidence was insufficient to convict Petitioner of two counts of aggravated sexual battery.

**Claim 2:** Counsel was ineffective for failing to:

    **2A:** "engage in discovery process,"

    **2B:** "argue the element of the charge to prevent excessive sentencing," and

    **2C:** "subpoena witnesses on behalf of Petitioner"

        **2C(1)** at trial, and

        **2C(2)** at sentencing.

**Claim 3:** Post-conviction counsel was ineffective in four ways.

(ECF No. 1 at 5-6.)

## DISCUSSION

Respondent, Shawn Phillips,[1] filed the state-court record and an answer to the Petition. (ECF Nos. 16 and 18.) He argues that one of Petitioner's sub-claims is procedurally defaulted, and that the remaining claims are without merit. Petitioner did not respond to the government's arguments, although allowed to do so, (*see* ECF No. at 8 at 2.)

**1. Legal Standards**

    **A. Habeas Review and Procedural Default**

---

[1] The clerk is **DIRECTED** to substitute Shawn Phillips for Mike Parris as Respondent. *See* Fed. R. Civ. P. 25(d).

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. at 405. An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308

(6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)).

## B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693-94) (citations omitted).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

### C. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and therefore governs Petitioner's claim. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id. See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)

(holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law, "based on an unreasonable application" of the controlling federal law, or "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

## 2.  Claim 1

Petitioner asserts that the evidence was insufficient to convict him of two counts of aggravated sexual battery. He raised this claim on direct appeal, and the TCCA rejected it. *See Hurd*, 2012 WL 12931991, at *5. It is unclear from his Petition whether he is contending that the TCCA's decision is contrary to clearly established federal law, involves an unreasonable application of such law, or is based on an unreasonable factual determination. Nevertheless, a review of the TCCA's decision and the state court record reveals that Petitioner has no viable argument under any of these standards.

Addressing Hurd's evidence-sufficiency claim, the TCCA described the governing legal standards as follows:

> [T]he relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). . . . The reviewing court may not re-weigh or re-evaluate the evidence, and may not substitute its own inferences for those drawn by the trier of fact. *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997).

* * *

> Aggravated sexual battery, in the circumstances of this case, is "unlawful sexual contact with a victim by the defendant" when the victim is less than thirteen years old. T.C.A. § 39–13–504. "Sexual contact" is the intentional touching of a person's intimate parts, defined as including "the primary genital area, groin, inner thigh, buttock or breast," "if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification."

*Hurd*, 2012 WL 12931991, at *4 (quoting Tenn. Code Ann. § 39-13-501(2)(6)).

Upon review of the record, the TCCA determined that the "proof at trial, seen in the light most favorable to the State, showed that the defendant told the victim to undress and touched the victim's intimate parts on or near her twelfth birthday; the victim avoided the defendant's home for a period of over two months thereafter; and that the defendant again made the victim undress and touched her intimate parts." *Id.* The court concluded that "the evidence was sufficient to uphold the defendant's convictions" for aggravated sexual battery. *Id.* at *5.

In so deciding, the TCCA acknowledged that the jury heard conflicting evidence. Specifically, the defendant's testimony contradicted the testimonies of "other witnesses, including that of the victim's mother, who testified that she did not ask the defendant to speak with the victim about sex or her menstrual cycle; that of the defendant's wife, who testified that the victim did not visit the defendant between the two incidents; and that of the victim." *Id.* at *4. The court found, however, that the defendant's contrary testimony did not "create[] such doubt regarding his guilt that no rational trier of fact could have found the essential elements of the crime." *Id.* Because the jury was "tasked with making credibility determinations and settling conflicts in testimony," the court refused to "re-weigh or re-evaluate the evidence." *Id.* (citing *State v. Cole*, 155 S.W.3d 885, 897 (Tenn. 2005)).

12

The appellate court's decision easily passes muster under the AEDPA's deferential review standards. As an initial matter, the court's determination that the evidence was sufficient to convict Hurd of two counts of aggravated sexual battery was not contrary to *Jackson*. The TCCA correctly identified the evidence-sufficiency standards set forth in *Jackson* and applied them to the facts. A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

The TCCA's decision is also not based on an unreasonable determination of the facts. The trial transcript shows that the victim testified that, on two occasions, the defendant told her to get undressed and then touched her vagina and breasts. (ECF No. 16-2 at 18, 21-24, 29, 31-32.) Despite the victim's earlier, inconsistent statement to Dr. Piercey that Petitioner had not touched her breasts, the jury implicitly found her in-court testimony to be credible. The transcript further shows that the victim's mother and Petitioner's wife refuted key aspects of his testimony. (*Id.* at 95, 130.) The jury implicitly found their testimonies to be credible. The TCCA appropriately refused to disturb any of the jury's credibility decisions, *see Jackson* 433 U.S. at 319, and Petitioner has not identified clear and convincing evidence to undermine them.

It therefore follows that the TCCA's ultimate conclusion that the evidence was sufficient to convict Petitioner of two counts of aggravated sexual battery was not based on an unreasonable application of *Jackson*'s standards to record. The victim, whose testimony the jury believed, described conduct by the defendant that meets the elements of aggravated sexual battery. *See e.g., Smith v. Parker,* No. 10-1158-JDB-egb, 2013 WL 5409783, at *24 (W.D. Tenn. Sept. 25, 2013) (holding the victim's testimony alone "was more than sufficient to sustain [the petitioner's] conviction for aggravated sexual battery").

For these reasons, Claim 1 is without merit and is **DENIED**.

**3. Claim 2**

In Claim 2, Petitioner asserts three sub-claims of attorney ineffectiveness. The Court finds that one sub-claim is procedurally defaulted and the remaining are without merit.

**a. Claim 2A**

Petitioner asserts that his attorney was ineffective by failing to secure pre-trial discovery materials. The claim is properly before this Court because it was raised on appeal from denial of post-conviction relief. *See Hurd*, 2014 WL 2014 WL 6482820, at *6. Although Hurd challenges the TCCA's rejection of the claim, he does not specify whether he believes that the decision is contrary to clearly established federal law, involves an unreasonable application of such law, or is based on an unreasonable factual determination. Nevertheless, a review of the TCCA's decision and the state court record reveals that Petitioner has no viable argument under any of these standards.

The TCCA reviewed the post-conviction evidence regarding pre-trial discovery, which consisted of the testimonies of Hurd and his attorney. Petitioner testified that counsel had not requested the victim's medical records. *Hurd*, 2014 WL 2014 WL 6482820, at *3 He also claimed that "counsel should have obtained the records of the victim's interview from [the Department of Children's Services] and the Carl Perkins Center to verify that his version of events was true." *Id.* On cross-examination, he "testified that he wanted trial counsel to talk to the victim." *Id.* Trial counsel testified that "Dr. Piercey's records were part of the discovery he received from the State and that Dr. Piercey testified and was cross-examined at trial." *Id.* at *4. He also stated that he had "received transcripts of the victim's interview at the Carl Perkins Center, and that he was . . . unaware of any additional material that he could or should have obtained." *Id.* He testified that

he spoke with the "victim coordinator at the prosecutor's office" about interviewing the victim, but was "informed that the victim did not want to meet with him." *Id.*

Rejecting Petitioner's claim that counsel was ineffective regarding discovery, the TCCA expressly invoked *Strickland*'s two-part test and concluded that counsel had not met the deficient performance prong. *Id.* at *6. The court reasoned:

> . . . Petitioner argues that trial counsel should have looked at the victim's medical records. However, the Petitioner has failed to prove that there are any medical records that trial counsel failed to obtain. In fact, the evidence shows that trial counsel did receive records of the examination Dr. Piercey performed. Also, Dr. Piercey testified and was cross-examined at trial. The Petitioner also asserts that trial counsel should have obtained records from the Carl Perkins Center, but the record reflects that the State provided trial counsel with a transcript of the victim's interview at Carl Perkins. Furthermore, trial counsel testified that although he did attempt to interview the victim, the victim coordinator at the prosecutor's office informed trial counsel that the victim did not wish to speak to him.

*Id.*

Petitioner has not shown that he is entitled to relief under the AEDPA. To begin with, the TCCA's ineffective-assistance determination is not contrary to clearly established Supreme Court law because the court applied *Strickland*'s standards to the facts before it. *See Williams*, 529 U.S. at 406.

The decision is also not based on an unreasonable determination of the facts. The post-conviction hearing transcript shows that counsel testified that he obtained Dr. Piercey's report and a copy of the victim's Carl Perkins interview. (ECF No. 16-3 at 74-75.) He also testified that he sought to interview the victim but she refused. (*Id.* at 79.) At the close of the hearing, the post-conviction trial court credited counsel's testimony, (ECF No. 16-13 at 90-92), and the TCCA refused to disturb that credibility finding, *Hurd*, 2014 WL 6482820, at *6. The finding is entitled to deference by this Court in the absence of clear and convincing contrary evidence, which Petitioner has not identified. *See Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) (holding

"state court's determination that counsel's testimony was more credible than the witnesses' testimony was not unreasonable" where there was "no clear and convincing evidence to justify a rejection of the trial court's credibility finding.") (citing 28 U.S.C. § 2254(e)(1)); *see also generally Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Since counsel credibly testified that he obtained or tried to obtain all relevant discovery materials, the TCCA's conclusion that counsel had not performed deficiently is patently reasonable. Petitioner therefore has not established that the TCCA's rejection of his claim was based on an unreasonable application of *Strickland*'s standards to the facts.

Claim 2A is **DENIED**.

### b. Claim 2B

Petitioner asserts that his attorney provided ineffective assistance by "fail[ing] to argue the element of the charge to prevent excessive sentencing." (ECF No. 1 at 6.) He does not indicate whether his attorney was ineffective for failing to make that argument at sentencing or on direct appeal.

Regardless, the claim has been procedurally defaulted. In his initial post-conviction proceeding, Hurd did not challenge counsel's failure to argue at the sentencing hearing that a twelve-year concurrent sentence was excessive. In his *pro se* and amended post-conviction petitions he did assert that counsel was ineffective on direct appeal for failing to argue that the sentence was excessive. (ECF No. 16-12 at 29, 57). On appeal from denial of post-conviction

relief, however, Petitioner did not raise any ineffective-assistance claim regarding his sentence. (*See* ECF No. 16-14 at 16.)  The time for doing so has passed.

Petitioner has not asserted cause for the default, or pointed to new evidence that he is actually innocent of the crimes for which he was convicted.[2]  The default is therefore unexcused.

Because Claim 2B is not reviewable in this federal habeas proceeding, it is **DISMISSED**.

### c.  Claim 2C

Petitioner asserts that his attorney provided ineffective assistance by failing to subpoena witnesses at trial (Claim 2C(1)) and at sentencing (Claim 2C(2)).  (ECF No. 1 at 7.)  Respondent argues that Claim 2C(1) is without merit, and fails to address Claim 2C(2).

### *Claim 2C(1)*

Hurd challenges his attorney's failure to call character witnesses in his defense.  Petitioner asserted this claim in his post-conviction proceedings, but it was rejected by both the post-conviction trial court, (ECF No. 16-12 at 70-71), and the TCCA, *Hurd*, 2014 WL 6482820 at *7.

Petitioner does not specify which AEDPA standard he believes the TCCA's decision violates.  The Court nevertheless determines that the decision easily meets all three AEDPA tests.

The TCCA reviewed the post-conviction record regarding trial counsel's decision not to call certain witnesses.  The record consisted of the testimonies of Hurd, seven character witnesses, and trial counsel.  Hurd testified that his attorney should have called the witnesses because their

---

[2]  In Claim 3, Petitioner alleges stand-alone claims of ineffective assistance of post-conviction counsel, including that post-conviction counsel "failed to challenge excessive sentencing."  (ECF No. 1 at 8.)  He does not assert, pursuant to *Martinez*, 566 U.S. at 9, that post-conviction counsel's failure to  litigate an ineffective-assistance claim regarding excessive sentencing was cause for his default of Claim 2B.

testimonies would have shown that he "wasn't a sexually defile [sic] person," but instead was a "'concerned, . . . little overprotective father.'" *Hurd*, 2014 WL 6482820 at *3 (alterations in original). On cross-examination, he "admitted that in 1986 he had been convicted of kidnaping, sexual battery, and theft of a vehicle." *Id.* The character witnesses each testified that "the Petitioner was a good father and . . . that he or she would have been willing to testify on the Petitioner's behalf at trial." *Id.* On cross-examination, "several of the witnesses expressed reservations when questioned about the Petitioner's admission that he had examined his daughter's breasts and vaginal area and felt that the situation should have been handled differently." *Id.*

Trial counsel testified that he did not call any character witnesses because he "fear[ed] that the prosecution would impeach the witnesses' testimony with the Petitioner's prior convictions." *Id.* at *5. He stated that he "discussed the decision not to call character witnesses with the Petitioner." *Id.* On cross-examination, counsel testified that "more witnesses [were] present at the post-conviction hearing than he was made aware of at trial." *Id.* He also "reiterated his belief that calling character witnesses would have ultimately been damaging to Petitioner's case." *Id.*

Applying *Stickland*'s two-part test to this record, the TCCA held that Petitioner had not shown that his attorney performed deficiently by deciding not to call character witnesses at trial. The court noted that several of the witnesses testified "that they considered Petitioner's physical examination of his daughter to be inappropriate." *Id.* at *7. The court also found that "trial counsel made a strategic decision not to present character witnesses after consideration of the consequences and after discussion with the Petitioner." *Id.*

Hurd has not shown that he is entitled to relief under the AEDPA on Claim 2C(1). To begin with, the TCCA's ineffective-assistance determination is not contrary to clearly established

Supreme Court law because the court applied *Strickland*'s standards to the facts before it. *See Williams*, 529 U.S. at 406.

Petitioner also has not established that the TCCA's conclusion that counsel was not ineffective was based on objectively unreasonable factual determinations. The transcript from the post-conviction hearing shows that Petitioner admitted he had prior convictions for harassment, burglary of an automobile, damage to property, kidnapping, sexual battery, and theft of a vehicle. (ECF No. 16-13 at 27-28.) Counsel's testimony, which the post-conviction court found credible, established that he was concerned that the jury would learn of the prior crimes:

> Q: Now, did you think that character evidence would any way have a bearing on this case? How did you approach that?
>
> A: Well, if I could have used character evidence I would have. My client's records, all of his convictions were over ten years old if I'm not mistaken, so he was able to testify unimpeached by the State, but—and I told him this—if I started putting character witnesses on the stand, that it was going to affect him, and I thought [the prosecution] had every right to ask them if part of his good character was one, two, three, four convictions that they probably didn't know about.
>
> * * *
>
> Q: You felt like had you brought forth—attempted to bring forth that character evidence, that would have potentially harmed Mr. Hurd?
>
> A: It couldn't have done anything but harm him.

(*Id.* at 77-78.) Petitioner has not identified any clear and convincing evidence to undermine post-conviction court's finding that counsel's testimony was credible.

Lastly, the TCCA's conclusion that counsel had not performed deficiently is not the result of an unreasonable application of the governing legal standards to the facts. The Court in *Strickland* held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Trial counsel's strategic decision to not present character witnesses was supported by what he knew about the nature and number of Petitioner's prior convictions, and the near certainty that character witnesses would open the door to the jury hearing about them.

Accordingly, Petitioner has not shown that the TCCA's determination fails AEDPA review. Claim 2C(1) is therefore **DENIED**.

*Claim 2C(2)*

Claim 2C(2) is procedurally defaulted. On appeal from denial of post-conviction relief, Hurd did not argue that his attorney failed to subpoena witnesses for sentencing, only that he did not subpoena witnesses for trial. (*See* ECF No. 16-14 at 16.) The time for raising the claim has passed.

Petitioner has not asserted cause for the default, or pointed to new evidence that he is actually innocent of the crimes for which he was convicted. The default is unexcused.

Because Claim 2C(2) is not reviewable in this federal habeas proceeding, it is **DISMISSED**.

## 4. Claim 3

Petitioner asserts that post-conviction counsel was ineffective by "fail[ing] to investigate the validity of the indictment[,] . . . challenge improper jury instruction[s,] . . . challenge excessive sentencing[,] . . . [and] . . . preserve post[-]conviction issues for appellate review." (ECF No. 1 at 8.)

Section 2254(i) provides that the ineffective assistance of post-conviction counsel "shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see*

*also Coleman*, 501 U.S. at 752 (holding there is no constitutional right to post-conviction counsel). Claim 3 is thus non-cognizable in this federal habeas proceeding, and is **DISMISSED**.

For all of these reasons, the Petition is **DENIED**. Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would

not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[3]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   August 22, 2018.

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.